**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIELLE POLLINGER and AKUA KWAKWA, individually and on behalf of all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) **CLASS ACTION COMPLAINT** |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SAINT PETER'S HEALTHCARE SYSTEM, INC. | ) ) |
| | ) |
| Defendant. | ) |
| | ) |

**Case No.:**

## CLASS ACTION COMPLAINT

Plaintiffs Danielle Pollinger and Akua Kwakwa ("Plaintiffs"), individually and on behalf of all others similarly situated, through the undersigned counsel, hereby alleges the following against Defendant Saint Peter's Healthcare System, Inc. ("Saint Peter's" or "Defendant"). Facts pertaining to Plaintiffs and their personal experiences and circumstances are alleged based upon personal knowledge and all other facts herein are alleged based upon information and belief, *inter alia*, the investigation of Plaintiffs' counsel.

## NATURE OF THE ACTION

1. This is a privacy class action arising from Defendant Saint Peter's Healthcare System, Inc.'s unlawful interception and disclosure of its patients' and website users' confidential communications through third-party tracking technologies embedded on its website, https://www.saintpetershcs.com/ (the "Website").

1

2.      Through its Website, Defendant invites patients and prospective patients to, among other things, search for medical conditions, identify healthcare providers, and access patient services, thereby encouraging users to communicate highly sensitive health-related information.

3.      Plaintiffs and Class Members provided this information to Defendant with the reasonable expectation that Defendant, as a healthcare provider, would not share their sensitive health information without their consent.

4.      Unbeknownst to users, Defendant uses tracking technologies on its Website—including Google Analytics, DoubleClick, and ShareThis—that intercept users' electronic communications in real time and transmit the contents of those communications to third parties.

5.      Defendant's conduct is not accidental. Rather, Defendant knowingly implemented these tracking technologies to monitor users' interactions with its Website and to disclose those interactions to third parties for analytics, marketing, and monetization purposes. These disclosures increase the value of Defendant's digital assets, including its Website, by enabling third parties to build detailed user profiles to help them target individuals with advertising for commercial gain.

6.      The interception of the user's sensitive and private communications is imperceptible to the average consumer's "naked eye" and occurs contemporaneously with the user's use of the Website. The tracking code embedded on Defendant's Website captures and transmits user communications to third parties at the same time those communications are sent to Defendant.

7.      The user communications intercepted and disclosed by Defendant include, without limitation: users' searches about medical conditions, medical providers, medical services, and user information relating to billing and payment for medical services and doctor visits, medical records, and patient portal access, all of which reflect users' private, protected health information.

2

8.      Defendant discloses this protected health information to third parties by coupling it with persistent identifiers that enable third parties to associate the communications with specific individuals.

9.      These disclosures are not incidental nor are they related to the provision of health care. Third parties use this highly sensitive and user-specific information to build and profit from detailed user profiles, enable targeted advertising, and improve analytics--all while Defendant benefits from increased marketing insight, engagement, and the enhanced value of its digital infrastructure.

10.     Defendant does not disclose that, upon receipt, users' private health information will be transmitted to third parties for marketing and analytics purposes, nor does Defendant obtain users' consent to do so.

11.     Defendant's conduct is ongoing and affects thousands of users like Plaintiffs and others similarly situated who have visited Defendant's Website from New Jersey and across the United States.

12.     As a result of Defendant's conduct, Plaintiffs and Class Members have suffered injury, including the invasion of their privacy, the unauthorized interception and disclosure of their confidential communications and sensitive health-related information, and the loss of control over their sensitive health-related information.

13.     Accordingly, Plaintiffs asserts claims for violations of the Electronic Communications Privacy Act and the New Jersey Wiretapping and Electronic Surveillance Control Act, and seeks damages, declaratory and injunctive relief based on Defendant's unlawful disclosure of protected health information, and all other relief permitted by law.

**PARTIES**

**A.     Plaintiff Danielle Pollinger**

14.     Plaintiff Danielle Pollinger ("Plaintiff") is a resident and citizen of New Jersey and has been Defendant's patient for many years. Plaintiff has used Defendant's Website numerous times, including on her mobile device, to access the health care services offered by Defendant.

15.     On multiple occasions, including in or about May 2026, Plaintiff accessed Defendant's Website using the Google Chrom Browser on her Samsung Galaxy mobile device.

16.     Among other things, Plaintiff used the Website to pay medical bills and search for physicians, maternity-related services, childbirth-related information, and information concerning Defendant's maternity ward and birthing philosophies. Plaintiff also used the Website to access patient-facing resources and healthcare-related services associated with Defendant.

17.     While interacting with the Website, Plaintiff transmitted electronic communications reflecting her private, sensitive healthcare needs and treatment.

18.     Defendant intercepted and disclosed Plaintiff's private healthcare-related communications and personal identifying information to third parties through embedded tracking technologies without Plaintiff's knowledge or informed consent.

19.     Plaintiff reasonably believed that her interactions with Defendant's Website, including her medical bill payments and searches for healthcare providers, maternity-related services, and patient resources, would remain private and confidential and would not be disclosed to advertising companies, analytics providers, or other third parties.

**B.     Plaintiff Akua Kwakwa**

20.     Plaintiff Akua Kwakwa ("Plaintiff Kwakwa") is a resident and citizen of New Jersey and has been Defendant's patient for many years. Plaintiff Kwakwa has used Defendant's

4

Website numerous times, including on her mobile device, to access the health care services offered by Defendant.

21.    On multiple occasions, including in or about the beginning of 2026 and as recently as May 2026, Plaintiff Kwakwa accessed Defendant's Website using the Google Chrome Browser on her iPhone and android mobile devices as well as on her tablet and desktop.

22.    Among other things, Plaintiff Kwakwa used the Website to search for physicians, pay medical bills and review her patient portal. Plaintiff Kwakwa also used the Website to access patient-facing resources and healthcare-related services associated with Defendant.

23.    While interacting with the Website, Plaintiff Kwakwa transmitted electronic communications reflecting her private, sensitive healthcare needs and treatment.

24.    Defendant intercepted and disclosed Plaintiff Kwakwa's private healthcare-related communications and personal identifying information to third parties through embedded tracking technologies without Plaintiff's knowledge or informed consent.

25.    Plaintiff Kwakwa reasonably believed that her interactions with Defendant's Website, including her medical bill payments and searches for healthcare providers, maternity-related services, and patient resources, would remain private and confidential and would not be disclosed to advertising companies, analytics providers, or other third parties.

**C.    Defendant**

26.    Defendant Saint Peter's Healthcare System, Inc. is a nonprofit healthcare provider headquartered in New Brunswick, New Jersey.

5

27.    Saint Peter's operates a large, integrated healthcare system that provides a broad range of medical services, including inpatient and outpatient care, specialty treatment, diagnostic services, and patient support services to individuals throughout New Jersey and the United States.

28.    Saint Peter's holds itself out as a trusted provider of healthcare services and collects, maintains, and processes highly sensitive personal and medical information in connection with the care it provides to patients and prospective patients.

29.    In addition to its physical healthcare facilities, Saint Peter's operates an extensive online presence, including its publicly accessible website, which serves as a primary point of interaction between the organization and its patients and prospective patients.

30.    Through its Website, Saint Peter's enables users to search for physicians, research medical conditions and treatments, locate healthcare facilities, access billing and payment services, request medical records, and use the patient portal.

31.    Saint Peter's designed, implemented, and controlled the operation of its Website, and intentionally embedded the third-party tracking technologies onto the Website that intercept and disclose users' communications to third parties.

32.    At all relevant times, Saint Peter's was responsible for the collection, use, storage, and disclosure of the information transmitted through its Website, including the electronic communications of Plaintiff and Class Members.

## JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including the Electronic Communications Privacy Act, 18 U.S.C. § 2510 et seq.

34. The Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District and Defendant operates its Website from this District. The acts and omissions giving rise to Plaintiffs' claim occurred in and emanated from this District.

35. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a) because Plaintiffs' state-law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

36. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

37. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in this District and therefore resides in this District pursuant to 28 U.S.C. § 1391(c)(2). Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' and Class Members' claims occurred in this District. The Website is accessible to and used by users throughout the district, and the tracking conduct at issue, is deployed from Defendant's centralized Website operated from this District. Plaintiffs reside in this District. Defendant's tracking conduct is nationwide in scope and emanates from its centralized Website, which is operated from and maintained in this District.

## BACKGROUND ON PIXEL TRACKING

38. Third-party tracking technologies—commonly referred to as "pixels"—can be embedded into websites to track user activity and data. These technologies, developed and operated by companies such as Google, Meta, and ShareThis, are designed to monitor and record

user behavior, collect detailed information about user website interactions, and transmit that information to third parties for analytics and/or commercial advertising purposes.

39.     The term "pixel" refers to a code embedded in a website's design that tracks when a user visits the site or interacts with specific pages. When triggered, the pixel causes the web browser to transmit data about the website's user activity to a third party. This transmission occurs in real time and can include both information that can be used to identify a particular user—such as IP addresses, cookies, and device identifiers—and the substance of the user's interaction with the website, including the pages viewed, buttons clicked, and text-box information entered into forms or search bars.

40.     Because these transmissions occur contemporaneously with the user's interaction with the website, the tracking technologies capture and transmit the contents of users' electronic communications at the time those interactions and communications are made.

41.     These pixel trackers function as part of a broader data aggregation ecosystem in which multiple entities collect, share, and combine user data across platforms. Through processes commonly referred to as "identity resolution," third parties match fragmented identifiers such as cookies, device IDs, and browsing activity to create a robust collection of individual-specific user profiles.

42.     This process enables third parties to link a user's interactions on one website with that same user's activity across other websites, applications, and devices, thereby allowing those entities to associate identifiable individuals with sensitive personal information and to build detailed profiles reflecting those individuals' interests.

43.     Third parties use this kind of detailed, individualized user data to enable targeted advertising, develop analytics, and increase the commercial value of digital advertising systems.

These uses have no relation to healthcare but rather create financial incentives for the continued collection, sharing, and ultimately the commercial exploitation of users' sensitive data.

## FACTUAL ALLEGATIONS

**Tracking Technologies Used by Defendant's Website**

44.    Google is a multinational technology company headquartered in Mountain View, California. Google operates one of the world's largest online advertising platforms, generating over $200 billion in annual revenue primarily through targeted advertising services. Google's business model depends on collecting vast amounts of user data across its numerous products and services, which it then leverages to deliver targeted advertisements.

45.    The Google Analytics 4 Tracker ("Google Analytics Tracker") is a web analytics service offered by Google that allows website owners to track visitors' actions on their website in order to gain insights into user behavior and to target them with personalized advertisements. Defendant has implemented the Google Analytics Tracker on its Website.

46.    The Google Analytics Tracker is a JavaScript-based tracking technology. Website owners implement the tracker by adding a snippet of JavaScript code to their website's source code. Once implemented, the tracker loads automatically and immediately whenever a user visits a page containing the tracker's source code. The tracking code executes in the background without any visible indication to the user, making it completely invisible to ordinary website visitors.

47.    The Google Analytics Tracker intercepts and collects various data points about user interactions with a website and transmits details of these interactions to Google. Along with these events, the Google Analytics Tracker transmits unique identifying cookies, including the 3PSID, 3PAPISID, 3PSIDCC, and NID cookies. The 3PSID, 3PAPISID, and 3PSIDCC cookies allow Google to identify users who are signed into their Google accounts (e.g., Gmail or Chrome),

9

thereby linking browsing activity on third-party websites to an authenticated Google identity. The NID cookie, by contrast, collects information from users even when they are not signed into a Google account, including users who have never authenticated or are logged out, enabling tracking regardless of authentication status. These cookies enable Google to create comprehensive user profiles and are third-party marketing cookies, meaning the information does not stay within the site but is sent to Google itself. These cookies can constitute personally identifiable information ("PII") as they are unique to each user and may be used to identify individuals.

48.    DoubleClick is an advertising tracking tool owned by Google and designed to collect information about user behavior on websites in order to improve the targeting and effectiveness of advertising campaigns. Defendant has implemented the DoubleClick tracker on its Website.

49.    Through the DoubleClick Tracker, Google creates and assigns unique identifiers to website visitors, including through the IDE and DSID cookies. The IDE cookie is a persistent advertising identifier used to build user profiles for cross-site ad targeting and to measure advertising effectiveness by tracking actions users take after viewing or clicking on advertisements. The DSID cookie is an account-linked identifier that is set when a user is logged into a Google account; it links browsing activity on non-Google websites to the user's Google account and ensures that the user's ad personalization settings are applied across non-Google sites. Google's own documentation confirms that DoubleClick collects and stores IP addresses in server logs, along with cookies that uniquely identify browsers. [1] Accordingly, the IDE and DISD

---

[1] *See* Google Privacy & Terms, https://policies.google.com/technologies/ads?hl=en-US, (last visited June 18, 2026).

10

cookies, along with the user's IP address, can constitute PII as they are unique to each user and may be used to identify individuals.

50. ShareThis is a data and technology company headquartered in Palo Alto, California. ShareThis provides website plugins that allow content and information to be shared across different platforms. ShareThis focuses on understanding real-time consumer behavior by collecting and analyzing interest and intent signals generated from users engaging with digital content. ShareThis provides data solutions that enable marketers and website publishers (such as Defendant) to generate insights, perform analytics, and activate interest and intent-based segments for marketing and advertising purposes. ShareThis's technology supports targeting, enrichment, personalization, and measurement across digital channels based on behavioral data collected at scale from websites that use ShareThis tools.

51. ShareThis's tools transmit the "_stid" cookie that functions as a persistent, pseudonymous identifier set on websites that have integrated ShareThis's tools. The _stid cookie is used in connection with ShareThis technologies deployed on publisher websites to recognize a browser or device over time in a pseudonymous manner. Information associated with ShareThis identifiers supports the collection and analysis of data about interactions with digital content, which ShareThis uses to derive insights and develop interest- and intent-based data products for marketing and advertising purposes. These cookies can constitute PII as they are unique to each user and may be used to identify individuals.

52. ShareThis engages in cookie syncing, a process that allows it to match the _stid cookie with identifiers used by other advertising platforms. When a webpage loads ShareThis's code, the browser may be redirected to a partner's domain to exchange and align user IDs. For example, ShareThis syncs IDs with Demdex, a component of Adobe Audience Manager (a data

11

management platform), that enables companies to gather and leverage user data across multiple channels. The Demdex.net domain collects user data from multiple sources, including websites and apps. This data is then processed for marketing purposes.

53.    Upon information and belief, the third-party tracking technologies embedded on Defendant's Website, including Google Analytics, DoubleClick, and ShareThis, operate as part of a broader advertising and data-sharing ecosystem. Through processes commonly referred to as identity resolution, cookie syncing, audience matching, and profile enrichment, these entities synchronize identifiers and exchange information in order to associate Website activity with specific users, devices, or browser profiles. These practices enable third parties to aggregate information concerning users' healthcare-related activities and incorporate that information into detailed consumer profiles used for analytics, audience targeting, advertising, and other commercial purposes.

**Defendant's Website Encourages Users to Provide Sensitive Health Information**

54.    Defendant Saint Peter's Healthcare System, Inc. operates a comprehensive healthcare website through which patients and prospective patients can search for physicians, explore medical services, locate healthcare facilities, access billing and payment information, request medical records, and navigate the patient portal.

55.    Plaintiffs and others similarly situated use Defendant's Website to communicate highly sensitive information concerning their health conditions, treatment needs, and status as patients. For example, when a user searches for a specialist in "Psychiatry" using Defendant's "Find a Doctor" feature, that search communicates the user's interest in obtaining mental health treatment and reflects information regarding the user's present or suspected medical needs.



**Figure 1**. Saint Peter's Website "Find a Doctor" search results for "Psychiatry."

56.    Likewise, when a user searches for specialists in oncology, cardiology, or other medical fields, the search itself conveys sensitive health-related information concerning the type of care the user is seeking.

57.    Similarly, a user accessing webpages on the Website related to billing, medical records, or the patient portal identifies themselves as a patient and engages in activities directly tied to their healthcare.

58.    These interactions constitute electronic communications between the user and Defendant's Website. Users reasonably expect that such communications, particularly those revealing sensitive health-related information, will remain confidential and will be used solely for purposes of providing healthcare services. [2]

---

[2] *See* Saint Peter's Healthcare Sys., Find a Doctor, https://www.saintpetershcs.com (last visited June 3, 2026.

13

**Defendant Uses Tracking Technologies to Capture and Disclose User Information**

59.     Unbeknownst to users, Defendant has embedded third-party tracking technologies throughout its website. These technologies include, but are not limited to, Google Analytics, DoubleClick, and ShareThis.

60.     These tracking tools are not passive or incidental to the Website's healthcare-related features. Rather, they are deliberately implemented pieces of code specifically designed to monitor user activity and transmit data to third parties.

61.     When a user visits Defendant's Website, the tracking code automatically executes within the user's browser. As part of this process, the user's browser sends user information to third-party servers controlled by entities such as Google and ShareThis.

62.     Defendant knowingly deployed these tracking technologies on webpages that users would foreseeably access to obtain and input information regarding medical conditions, treatment options, healthcare providers, billing matters, and patient services--despite the inherently sensitive and confidential nature of such interactions.

63.     The information transmitted to third parties as a result of these tracking technologies includes the contents of users' communications, including the specific pages visited, the sequence of user actions, and the text content of user searches, all of which reflect the substance and meaning of users' interactions with the Website. The transmissions further include "persistent identifiers" that enable third parties to associate the intercepted communications with particular individuals or devices, such as cookies, universally unique identifiers (UUIDs), device identifiers, and IP addresses.



**Figure 2.** Browser network request from Defendant's Website transmitting user interaction data and persistent identifiers to ShareThis.



**Figure 3**. Browser network request from Defendant's Website transmitting user interaction data and persistent identifiers, including a UUID, to Google Analytics.

**<u>Defendant's Interception and Transmission of Sensitive User Communications</u>**

64.    The operation of these tracking technologies results in the interception of users' communications with Defendant's website. Each time a user interacts with the site, the tracking code captures the substance of that interaction and transmits it to third parties in real time. The information transmitted includes the contents of users' communications, in that it reflects the substance, meaning, and context of users' interactions with the Website.

65.    For example, when a user searches for a medical specialty or condition using the website's "Find a Doctor" feature, the inputted search term—such as "psychiatry" or "addiction" or "depression"—is transmitted to third parties along with identifying information. Similarly, when a user views a specific physician's profile page, the identity of that physician and the fact

15

that the user viewed that page are transmitted to third parties—along with the persistent identifiers

that allow third parties to understand which user viewed it.



**Figure 4:** User's search for medical services is transmitted to Google Analytics



**Figure 5:** User's search for medical services is transmitted to DoubleClick



**Figure 6:** User's search for medical services is transmitted to ShareThis

66.     Plaintiffs used Defendant's Website to search for maternity-related services and childbirth-related information, which upon information and belief was transmitted to third parties together with Plaintiffs' identifying information. *See, e.g.,* Figures 4-6.

67.     The same is true when users navigate to pages associated with patient services. When a user accesses pages related to billing and payment, requests medical records, or visits Defendant's patient portal, those interactions are captured and transmitted to third parties. These interactions indicate that the user is an existing patient or is actively seeking medical care and reveal the nature of the user's engagement with Defendant's healthcare services.



**Figure 7:** User's "Medical Records Request" view on the Website is transmitted to Google Analytics.



**Figure 8:** User's "Medical Records Request" view on the Website is transmitted to DoubleClick.



**Figure 9:** User's "Medical Records Request" view on the Website is transmitted to ShareThis.



**Figure 10:** User's "Billing and Payment" view on the Website is transmitted to Google Analytics.



**Figure 11:** User's "Billing and Payment" view on the Website is transmitted to DoubleClick.



**Figure 12:** User's "Billing and Payment" view on the Website is transmitted to ShareThis.



**Figure 13:** User's "Patient Portal" view on the Website is transmitted to Google Analytics.



**Figure 14:** User's "Patient Portal" view on the Website is transmitted to DoubleClick.



**Figure 15:** User's "Patient Portal" view on the Website is transmitted to ShareThis.

68.     Plaintiffs used the Website to, among other things, pay medical bills and their sensitive health-related information was thereby captured by the third-party trackers embedded on the Website. *See, e.g.,* Figures 10-15.

69.     Users who search for information about medical conditions using Defendant's Website likewise communicate highly sensitive and personal health-related information to Defendant to support the user's healthcare needs. The search itself constitutes communications concerning the user's present or suspected medical condition and the type of healthcare services the user is seeking. For instance, a search for "diabetes" or "cancer" using Defendant's Website is likely intended to help the user learn about that condition and related treatment—the user is

unaware that searching for that information also results in the transmission of that search term, along with identifying user information, to entities such as Google and ShareThis.

70.    Even actions such as clicking on directions to a facility or using a "Book Online" feature can result in the transmission of data reflecting the user's intent to seek medical care.

71.    These transmissions occur contemporaneously with the user's interaction with the website and are initiated by the tracking code embedded by Defendant. As such, they constitute interceptions of electronic communications within the meaning of federal and state wiretap laws.

**More than Mere Data Collection: Defendant's Trackers Permit**
**<u>User Identity Resolution, Data Linking, and Multi-Party Sharing</u>**

72.    The third-party tracking technologies deployed on Defendant's Website do not merely collect isolated data points. Rather, they operate as part of a broader data aggregation ecosystem in which multiple entities synchronize identifiers and combine user data. Through identity resolution processes, third parties match cookies, device identifiers, and browsing activity to create unified profiles of individual users.

73.    These processes enable third parties to associate users' interactions with Defendant's Website, including their health-related searches and activities, with specific individuals or devices and with those users' broader online behavior. As a result, third parties are able to link identifiable individuals to particular medical conditions, treatment interests, and healthcare-related activities, and to incorporate that information into detailed user profiles.

74.    The tracking technologies further facilitate the sharing and synchronization of data among multiple third parties, allowing user data to be disseminated across a network of entities and integrated into broader datasets used for analytics, profiling, and targeted commercial advertising.

21

**Defendant's Use of Tracking Technologies Amounts to Disclosure of Protected Health Information**

75.   The information transmitted by Defendant to third parties includes data that qualifies as protected health information ("PHI"). Defendant is a healthcare provider and a covered entity under HIPAA.[3]  The information users communicate through the website relates directly to their health conditions, treatment needs, and interactions with healthcare services.

76.   When this information is combined with persistent identifiers such as cookies, UUIDs, device identifiers, and IP addresses, it constitutes individually identifiable health information because it can be used to identify, or provide a reasonable basis to identify, the individual to whom the information pertains.

77.   Third parties receiving this data are able to associate specific health-related interactions with particular users or devices. This allows those third parties to build detailed profiles of individuals, including their medical interests, conditions, and healthcare activities.

78.   The disclosures are not limited to isolated data points. Rather, Defendant transmits a continuous stream of information reflecting users' interactions with the website, including the pages visited, searches conducted, and actions taken. *See* Figures 1-15. This data enables third parties to reconstruct users' healthcare related activities and infer sensitive medical information about the user.

79.   The disclosure of user data through these tracking technologies is not incidental. Third parties use the transmitted information to build and enhance user profiles, enable targeted advertising, improve analytics, and increase the value of digital advertising inventory.

---

[3] *See* 45 C.F.R. §§ 160.102, 160.103.

80.     By deploying these tracking technologies, Defendant benefits from analytics, marketing insights, and increased engagement, while third parties profit from the ability to target users based on sensitive health-related information.

**Lack of User Consent and Reasonable Expectations of Privacy**

81.     At no point does Defendant obtain meaningful consent from users to intercept and disclose their communications in this manner. Users are not informed that their interactions with the Website-including searches for medical conditions and access to patient services-will be transmitted to third parties for advertising, analytics, or other commercial purposes. Plaintiffs were never informed that her use of the Website to pay medical bills or run searches concerning maternity-related services, childbirth-related care, or other healthcare-related activities would be transmitted to third parties for advertising or analytics purposes. To the contrary, Defendant's Notice of Privacy Practices represents that patient information will not be shared for marketing purposes without written permission.



**Figure 16.** Excerpt from Defendant's Notice of Privacy Practices stating that patient information will not be shared for marketing purposes without written permission.[4]

82.     Defendant's purported disclosures regarding the use of cookies or analytics tools are insufficient to establish consent. Such disclosures, if they exist at all, are buried in lengthy and inconspicuous privacy policies that users are not required to read or affirmatively accept in order to use the Website, and they do not clearly inform users that the contents of their health-related communications will be intercepted and shared with third parties.

83.     A reasonable user visiting Defendant's Website would not expect that searching for a medical condition, viewing a physician, or accessing patient services would result in the disclosure of their personal health information to advertising and data analytics companies.

---

[4] https://www.saintpetershcs.com/patients/patients-rights-responsibilities.

84. The unauthorized interception and disclosure of this information violates users' reasonable expectations of privacy and undermines the confidentiality that is fundamental to the provision of healthcare services.

85. Upon information and belief, Defendant has not executed HIPAA-compliant Business Associate Agreements with Google or ShareThis for the tracking activities described herein and has not obtained HIPAA-compliant patient authorizations necessary to permit the disclosure of Website user's sensitive health-related information to third parties for non-treatment purposes.

**Defendant's Concealment, Tolling and Equitable Estoppel**

86. The applicable statutes of limitation have been tolled as a result of Defendants' knowing concealment of its unauthorized interception and disclosure of user information.

87. Defendants secretively incorporated the at-issue tracking technologies into its Website and denied, in writing, its use of user information for marketing purposes.

88. There was no reasonable way for the average Website user to discover the full scope of Defendant's conduct because Defendant failed to disclose it and even affirmatively—and incorrectly—represented that it "never" used patient information without written permission.

89. As a result, the applicable statutes of limitation have been tolled by operation of the discovery rule and the doctrine of continuing tort through the date of the filing of Plaintiffs' Complaint.

90. Additionally, Defendants had a duty to disclose their data collection and disclosure practices but did not. As such, Defendants are estopped from relying on any statute of limitations defenses.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure 23.

92.     Plaintiffs propose the following Class definition subject to amendment based on information obtained through discovery. Notwithstanding, at this time, Plaintiffs brings this action and seeks certification of the following Nationwide Class and New Jersey Subclass (collectively defined herein as the "Class"):

### Nationwide Class

All persons in the United States who visited Defendant's website and whose electronic communications and/or protected health information were intercepted, collected, or disclosed to third parties through Defendant's use of tracking technologies.

### New Jersey Subclass

All persons in New Jersey who visited Defendant's website and whose electronic communications and/or protected health information were intercepted, collected, or disclosed to third parties through Defendant's use of tracking technologies.

93.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, directors, agents, and employees, as well as any judicial officer presiding over this action and the members of their immediate families and judicial staff.

94.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of her claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions.

95.     **Numerosity**-The members of the Class are so numerous that joinder of all members would be impracticable. Defendant's Website is publicly accessible and serves a large population of patients and prospective patients. On information and belief, the Class includes at least tens of

thousands of individuals whose communications were intercepted and disclosed through Defendant's tracking technologies.

96. **Commonality and Predominance**-Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. These common questions arise from Defendant's uniform conduct in implementing and operating tracking technologies on its Website and include, without limitation, whether Defendant's website was configured to transmit users' communications to third parties, whether such transmissions constituted interceptions of electronic communications, and whether Defendant disclosed the contents of those communications without authorization.

97. Additional common questions include whether the information transmitted by Defendant constituted the contents of communications under federal and state wiretap laws, whether the information qualifies as protected health information when combined with persistent identifiers, whether Defendant obtained valid consent from users, and whether Defendant's conduct was undertaken for unlawful or tortious purposes sufficient to satisfy the crime–tort exception.

98. These questions are capable of class-wide resolution because they depend on Defendant's common course of conduct and the uniform design and operation of its Website and tracking technologies, rather than on individualized inquiries into each Class member's circumstances.

99. **Typicality**-Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all Class members, visited Defendant's Website and had her communications intercepted and disclosed to third parties as a result of Defendant's uniform implementation of tracking technologies.

100. Plaintiffs and all Class Members were subjected to the same alleged misconduct and suffered the same type of injury, including the unauthorized interception and disclosure of their communications and the invasion of their privacy.

101. **Adequacy of Representation**-Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to those of the Class and seeks the same relief as other Class Members.

102. Plaintiffs have retained counsel experienced in complex class action litigation, including privacy and data misuse cases, and are committed to prosecuting this action vigorously on behalf of the Class.

103. **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**-Defendant has acted and refused to act on grounds generally applicable to the Class by implementing and continuing to use tracking technologies that intercept and disclose users' communications and protected health information without authorization.

104. As a result, declaratory and injunctive relief is appropriate with respect to the Class as a whole to prevent Defendant from continuing its unlawful conduct and to require Defendant to bring its practices into compliance with applicable law.

105. **Superiority—Federal Rule of Civil Procedure 23(b)(3)**-A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the damages and other harm suffered by individual Class members are relatively small compared to the burden and expense of individual litigation.

106. Absent a class action, most Class members would be unable to vindicate their rights, and Defendant would be allowed to retain the benefits of its unlawful conduct.

107. Class treatment will also avoid the risk of inconsistent or varying adjudications and will conserve judicial resources by resolving the claims of all Class members in a single proceeding.

**COUNT I**
**Violation of the Electronic Communications Privacy Act**
**(18 U.S.C. § 2511)**
**(On Behalf of Plaintiffs and the Class)**

108. Plaintiffs repeat and reallege paragraphs 1-107 as if fully set forth herein.

109. The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring another person to intercept any electronic communication, as well as from intentionally disclosing the contents of such communications, unless a statutory exception applies.

110. At all relevant times, Plaintiffs and Class Members were engaged in electronic communications with Defendant through Defendant's Website, including by transmitting requests, searches, and interactions through their web browsers to Defendant's servers for the purpose of obtaining healthcare-related information and services.

111. These communications were transmitted via interstate wire and electronic networks and constituted "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

112. Defendant intentionally embedded and operated third-party tracking technologies—including but not limited to Google Analytics, DoubleClick, and ShareThis—that were designed to, and did in fact, intercept these electronic communications during the course of transmission.

113. Specifically, when Plaintiffs and Class Members interacted with Defendant's website, Defendant's embedded code caused their browsers to simultaneously transmit data to

third-party servers at the same time the communications were sent to Defendant, thereby effectuating a contemporaneous interception of those communications.

114. This interception was not incidental to the functioning of the Website, nor merely necessary to facilitate the routing or technical functioning of communications but rather was a core and intended function of the tracking technologies, which were implemented for the purpose of capturing and transmitting user data to third parties for commercial purposes.

115. The communications intercepted by Defendant included the "contents" of electronic communications as defined by 18 U.S.C. § 2510(8), in that they conveyed information concerning the substance, purport, and meaning of Plaintiffs' and Class Members' interactions with Defendant's website.

116. These contents included, without limitation, users' searches for medical conditions and specialties, the identities of healthcare providers viewed, the services and treatments explored, and users' interactions with pages associated with patient status, such as billing, medical records, and patient portal access.

117. The intercepted communications further included full or partial URL strings and page-level data reflecting the specific healthcare-related content accessed by users, which reveal the nature and context of the users' inquiries and communications.

118. Defendant caused these communications to be transmitted together with persistent identifiers—including cookies, device identifiers, and IP addresses—that enabled third parties to associate the communications with specific individuals or devices.

119. By combining the substance of users' communications with identifying information, Defendant ensured that the intercepted communications could be attributed to particular users and incorporated into detailed user profiles maintained by third parties.

30

120. Defendant intentionally disclosed, and caused to be disclosed, the contents of these communications to third parties, including Google and ShareThis, at the time the communications were made.

121. Defendant knew, or was reckless in not knowing, that its use of these tracking technologies would result in the interception and disclosure of users' communications, including sensitive health-related information.

122. Defendant's interception and disclosure of these communications was not necessary to provide the services requested by users, but instead was undertaken for purposes of analytics, tracking, marketing, and monetization of user data.

123. Although Defendant was a party to the communications with Plaintiffs and Class Members, the statutory "party exception" under 18 U.S.C. § 2511(2)(d) does not apply because Defendant intercepted and disclosed the communications for the purpose of committing unlawful or tortious acts.

124. In particular, Defendant's conduct involved the unauthorized disclosure of protected health information and other highly sensitive personal data to third parties in violation of privacy laws and duties of confidentiality, including obligations imposed under HIPAA and analogous privacy principles.

125. These violations constitute independent unlawful acts separate and apart from the interception itself and therefore satisfy the crime–tort exception to the ECPA's consent provision.

126. Defendant's conduct was intentional, willful, and undertaken with knowledge that it would result in the interception and disclosure of users' confidential communications.

127. As a direct and proximate result of Defendant's violations of the ECPA, Plaintiffs and Class Members suffered injury, including the invasion of their privacy, the unauthorized

31

disclosure of their confidential communications, and the loss of control over their sensitive personal and health-related information.

128. Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class Members are entitled to recover statutory damages, actual damages, punitive damages, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT II
### Violation of the New Jersey Wiretapping and Electronic Surveillance Control Act
### (N.J. Stat. § 2A:156A-1 et seq.)
### (On Behalf of Plaintiffs and the Class)

129. Plaintiffs repeat and reallege paragraphs 1-107 as if fully set forth herein.

130. The New Jersey Wiretapping and Electronic Surveillance Control Act ("NJWESCA"), N.J. Stat. § 2A:156A-1 et seq., prohibits any person from intentionally intercepting, endeavoring to intercept, or procuring another person to intercept any wire, electronic, or oral communication, as well as from disclosing the contents of such communications without authorization.

131. At all relevant times, Plaintiffs and Class Members were engaged in electronic communications with Defendant through Defendant's Website, including by transmitting requests, searches, and interactions through their web browsers in order to obtain healthcare-related information and services.

132. These communications were transmitted through electronic systems and networks and constitute "electronic communications" within the meaning of N.J. Stat. § 2A:156A-2.

133. Defendant intentionally designed, implemented, and operated its website in a manner that incorporated third-party tracking technologies—including Google Analytics, DoubleClick, and ShareThis—that were configured to capture and transmit user communications to third parties.

134.    By embedding these tracking technologies into its website, Defendant knowingly and intentionally caused the contemporaneous interception of Plaintiffs' and Class Members' electronic communications at the time those communications were transmitted.

135.    In addition to directly intercepting communications, Defendant procured and facilitated the interception of those communications by third parties by causing users' browsers to transmit data simultaneously to Defendant and to third-party servers.

136.    Defendant's conduct therefore constitutes both direct interception and procurement of interception within the meaning of N.J. Stat. § 2A:156A-3.

137.    The communications intercepted by Defendant included the "contents" of those communications, as defined under N.J. Stat. § 2A:156A-2(g), because they conveyed information concerning the substance, purport, and meaning of Plaintiffs' and Class Members' interactions with Defendant's Website.

138.    These contents included, among other things, users' searches for medical conditions and specialties, the identities of healthcare providers viewed, the services and treatments explored, and users' navigation of pages associated with patient status, including billing, medical records, and patient portal access.

139.    The intercepted communications further included detailed page-level data and URL information reflecting the specific healthcare-related content accessed by users, which reveals the nature and context of the users' communications with Defendant.

140.    Defendant caused these communications to be transmitted together with persistent identifiers, including cookies, device identifiers, and IP addresses, which enabled third parties to associate the communications with specific individuals or devices.

141.    Defendant knowingly disclosed, and caused to be disclosed, the contents of Plaintiffs' and Class Members' communications to third parties, including Google and ShareThis, at or about the same time the communications were made.

142.    These disclosures were not necessary to provide healthcare services to users, but instead were undertaken for purposes of analytics, tracking, advertising, and monetization of user data.

143.    Defendant did not obtain prior consent from Plaintiffs or Class Members to intercept or disclose their communications, and any purported consent was neither informed nor meaningful.

144.    A reasonable user would not expect that communications with a healthcare provider—including searches for medical conditions or access to patient services—would be intercepted and disclosed to third-party advertising and analytics companies.

145.    Although Defendant was a party to the communications, the statutory exception under N.J. Stat. § 2A:156A-4(d) does not apply because Defendant intercepted and disclosed the communications for the purpose of committing unlawful or tortious acts.

146.    Specifically, Defendant's conduct involved the unauthorized disclosure of protected health information and other confidential personal data in violation of privacy rights and duties of confidentiality, including obligations imposed under HIPAA and New Jersey law.

147.    These violations constitute independent unlawful acts separate from the interception itself and therefore satisfy the unlawful–tort exception under NJWESCA.

148.    Defendant's conduct was intentional, willful, and undertaken with knowledge that it would result in the interception and disclosure of users' confidential communications.

149.    As a direct and proximate result of Defendant's violations of NJWESCA, Plaintiffs and Class Members have suffered injury, including the invasion of their privacy, the unauthorized disclosure of their confidential communications, and the loss of control over their sensitive personal and health-related information.

150.    Pursuant to N.J. Stat. § 2A:156A-24, Plaintiffs and Class Members are entitled to recover statutory damages, actual damages, punitive damages, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT III
### Declaratory Relief
### (On Behalf of Plaintiffs and the Class)

151.    Plaintiffs repeat and reallege paragraphs 1-107 as if fully set forth herein.

152.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

153.    The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), together with its implementing regulations, establishes comprehensive standards governing the privacy and security of individuals' medical information and imposes strict limitations on the use and disclosure of protected health information by covered entities.

154.    Defendant is a healthcare provider that transmits health information in electronic form in connection with covered transactions and is therefore a "covered entity" within the meaning of 45 C.F.R. § 160.103.

155.    HIPAA defines "protected health information" ("PHI") as individually identifiable health information that is transmitted or maintained in any form or medium and that relates to an

individual's past, present, or future physical or mental health condition, the provision of healthcare to the individual, or the payment for such care.

156. As alleged herein, Plaintiffs and Class Members communicated information through Defendant's Website that directly relates to their health conditions, treatment interests, and healthcare activities, including searches for medical conditions, selection of healthcare providers, and access to patient-related services such as billing, medical records, and patient portal functionality.

157. When such information is transmitted together with persistent identifiers—including cookies, device identifiers, and IP addresses—it becomes individually identifiable because it can be used to identify, or provide a reasonable basis to identify, the individual to whom the information pertains.

158. Accordingly, the information transmitted by Defendant through its Website constitutes protected health information within the meaning of HIPAA.

159. HIPAA and its implementing regulations prohibit covered entities from using or disclosing protected health information except as expressly permitted, including for purposes of treatment, payment, or healthcare operations, or where a valid, HIPAA-compliant authorization has been obtained from the individual.

160. Defendant disclosed Plaintiffs' and Class Members' protected health information to third parties, including Google and ShareThis, through the operation of its embedded tracking technologies.

161. These disclosures occurred automatically and contemporaneously with users' interactions with Defendant's website and were not incidental to the functioning of the website,

but rather were the direct and intended result of Defendant's implementation of third-party tracking tools.

162. The disclosures at issue were not for purposes of treatment, payment, or healthcare operations, but instead were made for analytics, tracking, marketing, and other commercial purposes unrelated to the provision of healthcare.

163. Defendant did not obtain valid, HIPAA-compliant authorizations from Plaintiffs or Class Members permitting the disclosure of their protected health information to third parties for such purposes.

164. Nor did Defendant enter into valid business associate agreements with the third parties receiving the information that would permit such disclosures under HIPAA's regulatory framework.

165. As a result, Defendant's disclosure of protected health information was not permitted under HIPAA and violated the statute's privacy requirements and the duties of confidentiality owed to Plaintiffs and Class Members.

166. Defendant's unlawful disclosures of protected health information constitute conduct that is independent of, and in addition to, the interception of electronic communications alleged herein and demonstrate that Defendant's actions were undertaken for unlawful and improper purposes.

167. Defendant's conduct reflects a systemic practice of transmitting sensitive health-related information to third parties without authorization, thereby undermining the privacy protections that HIPAA is designed to safeguard.

37

168.    Defendant continues to employ tracking technologies that result in the ongoing interception and disclosure of protected health information, creating a real and immediate threat of future harm to Plaintiffs and Class Members.

169.    Plaintiffs and Class Members lack an adequate remedy at law to prevent Defendant's continuing violations and the ongoing unauthorized dissemination of their confidential health information.

170.    Plaintiffs do not assert a private right of action under HIPAA. Rather, Plaintiffs relies on HIPAA and its implementing regulations as establishing the standard of care governing Defendant's handling of protected health information and as evidence that Defendant's conduct was unlawful and contrary to established privacy protections.

171.    Plaintiffs therefore seek declaratory and injunctive relief prohibiting Defendant from continuing to intercept, disclose, and otherwise misuse Plaintiffs' and Class Members' protected health information, and requiring Defendant to remove or appropriately reconfigure its tracking technologies and practices to comply with applicable federal and state privacy laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant, as follows:

A.    An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representative, and appointing Plaintiffs' counsel as Class Counsel;

B.    A declaration that Defendant's conduct, as alleged herein, violates the Electronic Communications Privacy Act, the New Jersey Wiretapping and Electronic

38

Surveillance Control Act, and applicable privacy laws governing the confidentiality of individuals' communications and protected health information;

C. An Order permanently enjoining Defendant from continuing to intercept, collect, transmit, or disclose Plaintiffs' and Class Members' electronic communications and protected health information through the use of tracking technologies without valid authorization;

D. An Order requiring Defendant to remove, disable, or appropriately reconfigure all tracking technologies on its website that result in the interception or disclosure of users' communications or protected health information in violation of law;

E. An Order requiring Defendant to implement and maintain adequate safeguards, policies, and technical controls to ensure that users' communications and protected health information are not intercepted, disclosed, or otherwise misused in violation of federal or state law;

F. An Order requiring Defendant to provide clear, complete, and accurate disclosures to users regarding its data collection, tracking, and sharing practices, including the nature and scope of any disclosures of protected health information to third parties;

G. An award of statutory damages to Plaintiffs and Class Members as provided by law, including under 18 U.S.C. § 2520 and N.J. Stat. § 2A:156A-24;

H. An award of actual, compensatory, and, where appropriate, punitive damages, in an amount to be determined at trial;

I. An award of restitution and disgorgement of all revenues, profits, and other benefits obtained by Defendant as a result of its unlawful conduct;

J.  An award of attorneys' fees, costs, and expenses, including expert witness fees, as

permitted by law;

K.  Pre-judgment and post-judgment interest as permitted by law; and

L.  Such other and further relief as the Court deems just and proper.


**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.


Date:   June 19, 2026                          Respectfully submitted,



/s/    *Gary S. Graifman*
Gary S. Graifman
Melissa R. Emert*
**KANTROWITZ, GOLDHAMER ,**
**GRAIFMAN, PERLMUTTER & CARBALLO**
**P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
T: 845-356-2570
F: 845-356-4335
memert@kgglaw.com
ggraifman@kgglaw.com

**DON BIVENS PLLC**
Lisa Bivens*
15169 N. Scottsdale Rd, Suite 205
Scottsdale, AZ 85254
Telephone: 602-762-2661
lisa@donbivens.com

*pro hac vice to be filed*

*Attorneys for the Plaintiffs and the Putative Classes*